RECEIVED
IN LAKE CHARLES, LA.

MAR - 1 2013

TONY R. MOORE, CLERK
BY _____ /7/ _____
              DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CAROL HENRY, INDIVIDUALLY, AND D/B/A THE PERFECT GIFT | : | DOCKET NO. 2:11-1330 |
| VS. | : | JUDGE MINALDI |
| O'CHARLEY'S INC., O'CHARLEY'S INC. OF TENNESEE, O'CHARLEY'S SERVICE COMPANY, AND JARED HEATH | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 41], filed by the defendant, O'Charley's, LLC ("O'Charley's"), formerly known as O'Charley's Inc. of Tennessee and O'Charley's Service Company. The motion is opposed by the plaintiff, Carol Henry [Doc. 43]. O'Charley's then timely filed a reply [Doc. 50]. Also before the court is a Motion for Partial Summary Judgment on Medical Causation as to Plaintiff's Post-Incident Blackouts [Doc. 37] filed by O'Charley's, which the plaintiff also opposes [Doc. 46], and for which O'Charley's also filed a reply [Doc. 37]. The undersigned finds that as these motions are fully briefed, they are ripe for consideration. For the foregoing reasons, O'Charley's Motion for Summary Judgment is DENIED and O'Charley's Partial Motion for Summary Judgment on Medical Causation is GRANTED.

## BACKGROUND

Henry originally filed a petition for damages in the Fourteenth Judicial Court of Calcasieu Parish, Louisiana.[1] In her petition, she alleged that on or about September 26, 2010, while she was dining at the O'Charley's restaurant located in Lake Charles, Louisiana, she

---

[1] Pl.'s Compl., [Doc. 1-1].

stepped in water or a similar substance on the floor near the entrance to the bathroom, causing her to slip and fall and suffer various injuries.[2]  The defendants then timely removed this case to federal court on the basis of diversity jurisdiction.[3]

## A.  Facts Relevant to O'Charley's Motion for Summary Judgment

The uncontested facts are as follows.  On September 26, 2010, Henry slipped in a "salad plate" sized puddle of water at the O'Charley's restaurant location in Lake Charles, Louisiana.[4] The following witnesses offered testimony on the incident: Henry, her dining companion Carol Ann Martin, former O'Charley's bar manager Jared Heath, former O'Charley's employee Garrett Peak, and current O'Charley's general manager Christopher Paul Bruce.[5]  No witnesses possessed any information from any source whatsoever as to how long the puddle of water was present on the floor prior to Henry's fall, or any information from any source that any O'Charley's employee knew the water was present during Henry's fall.[6]  The puddle was clear, with no signs of footprints through it.[7]

The parties' main contention is whether an O'Charley's employee actually created the puddle of water.  O'Charley's alleges that no witness had any information from any source that an employee caused the puddle of water in which Henry slipped,[8] and that the area in which

---

[2] *Id.* at ¶ ¶ 2, 3, and 6.

[3] Not. of Removal, [Doc. 1].

[4] Def.'s Statement of Uncontested Facts for Mot. for Summ. J., [Doc. 41-1] at ¶ 1.

[5] *Id.* at ¶ 2.

[6] *Id.* at ¶ ¶ 5 – 6.

[7] *Id.* at ¶ 7.

[8] *Id.* at ¶ 4.

Henry slipped is frequently traversed by customers, who carry their drinks to and from the bar.[9]

Henry counters that the area where she slipped intersects with a path on which servers carry

water, concluding that this means that the area has a much higher likelihood of being a location

where employees would spill water.[10]   Henry further avers that the area in the restaurant where

she slipped intersected with a path on which it is not likely that a guest would be carrying drinks,

including water.[11]

### B. Additional Fact Relevant to O'Charley's Motion for Partial Summary Judgment on Medical Causation for Henry's Blackouts

Following Henry's slip and fall at O'Charley's, she suffered two blackouts, the first of

which occurred six or seven months after her fall.[12]  Before her accident, she had experienced

two blackouts, the last of which was in June 2010 (roughly three months before her accident).[13]

Henry went to see Dr. Snider and Dr. Bailey to address her blackouts.[14]

The parties' contention on this issue is whether Henry has produced any medical

evidence of post-incident blackouts, or whether these blackouts are a result of her fall at

O'Charley's.  Henry avers that her tests for blackouts revealed "medical issues."  She also argues

she has produced medical evidence as to the causation of these blackouts, and that this evidence

shows that the blackouts were related to her accident at O'Charley's.[15]

---

[9] *Id.* at ¶ 8.

[10] *See* Pl.'s Statement of Contested Facts for Mot. for Summ. J., [Doc. 47-1], at ¶ 1.

[11] *Id.* at ¶ 2.

[12] Def.'s Statement of Uncontested Material Facts for Partial Mot. for Summ. J., [Doc. 37-2], at ¶ 3.

[13] *Id.* at ¶ 2.

[14] *Id.* at ¶ 3.

[15] Pl.'s Statement of Contested Facts for Partial Mot. for Summ. J., [Doc. 46-1], at ¶¶ 1 – 3.

O'Charley's now moves for summary judgment on Henry's claims and on the issue of medical causation of her blackouts.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).  If the dispositive issue is one that the nonmoving party bears the burden of proof at trial, the moving party may satisfy its burden by merely identifying evidence in the record that negates an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954.  In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party."  *Id.*

## LAW & ANALYSIS

I.   **The Plaintiff has Created a Fact Issue on whether O'Charley's Created the Hazardous Condition**

4

The merchant liability "slip and fall" statute governs Henry's claims. *See Walthall v. E-Z Serve Convenience Stores, Inc.*, 988 F.Supp. 996, 999 (E.D. La. 1997), aff'd, 146 F.3d 868 (5th Cir. 1998).  O'Charley's qualifies as a "merchant" under the statute; therefore, O'Charley's "owes a duty to persons who use [its] premises to exercise reasonable care to keep its aisles, passageways, and floors in a reasonably safe condition." LA. REV. STAT. § 9:2800.6(A).  In her action against O'Charley's, Henry bears the burden of proving:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) [O'Charley's] either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) [O'Charley's] failed to exercise reasonable care.

LA. REV. STAT. § 9:2800.6(B).

O'Charley's spends a considerable amount of time in its motion briefing whether it had constructive notice of the water puddle.  Reviewing Henry's opposition brief, however, it appears that her argument does not hinge on constructive notice: she argues that "[the plaintiff] does not need to prove that the merchant had actual or constructive notice of the condition" since § 9:2800.6(B)(2) allows a plaintiff to prove that the merchant "<u>either</u> created <u>or</u> had actual <u>or</u> constructive notice of the condition."[16]  Henry's argument therefore rests squarely on the claim that there is a question of material fact on whether O'Charley's created the puddle.[17]

O'Charley's argues that Henry cannot meet her burden on showing that an O'Charley's employee actually created the water puddle.  It notes that every single witness deposed in this matter testified that they had no information to suggest the source of the puddle, or that an

---

[16] Pl.'s Opp. to Mot. for Summ. J., [Doc. 47], at pg. 1 (emphasis in original).

[17] *See id.*

O'Charley's employee actually caused the puddle.[18]  O'Charley's notes that instead, Henry's claim that an employee created the puddle is solely based on the "location of the puddle."[19]  It alleges that because Henry has no positive evidence showing that an employee created the puddle, she is "substitut[ing] positive evidence with two unsupported inferences: (1) the puddle resulted from a spill; (2) an O'Charley's employee caused the spill."[20]  It asserts that, while the area that contained the spill is "located near the door that serves as a one-way entry into the kitchen," it is also an area that sustains significant customer foot traffic.[21]  It further avers that both the former and current general managers of O'Charley's testified in their depositions that they had often seen customers traversing the area where Henry slipped, sometimes with drinks in their hands.[22]

Henry counters that there is sufficient evidence to create a fact question on whether O'Charley's created the puddle.  She cites to the deposition of Mr. Peak, an employee of O'Charley's, who acknowledged that the area where she slipped was a path "near the hallway leading to the restroom" and also "in the path of where O'Charley's wait staff walked and where he had seen them spill drinks and water" on other occasions.[23]  Peak further testified that the area where she slipped is an area of the restaurant where "servers are walking to and from" and "has a higher likelihood that drinks would be spilled."[24]  She also cites to the current manager, Mr.

---

[18] Def.'s Mot. for Summ. J., [Doc. 41-3], at pgs. 12 – 13.

[19] *Id.* at pg. 14.

[20] *Id.*

[21] *Id.*

[22] *Id.* at pg. 15.

[23] [Doc. 47] at pgs. 1 – 2.

[24] *Id.* at pg. 2.

Bruce's, testimony in which he drew a diagram of the path that servers took to carry water to the dining area: reviewing the diagram, Henry argues that the area where she slipped is directly in the path that the servers traverse.[25]  She notes that Bruce also acknowledged that water can fall from glasses, pitchers, and trays that employees carry to the dining room, and that the path O'Charley's employees take to return drinks to the kitchen also intersects the same area where she slipped and fell.[26]

Henry then points to additional evidence that O'Charley's most likely created the spill. She notes that usually, customers who arrive at the restaurant are led to their tables or booths by the hostess, and stay at their tables or booths unless they go to the bathroom or are getting up to leave after paying their bill.[27]  She states that Peak testified that it is uncommon for customers to get up from their table to go to the bar.[28]  She further argues that "examining the floor plan of the restaurant, and considering guests sitting in a booth or table, the most likely method by which a guest would spill a drink in the area where she fell would be if they took their drink to the bathroom," an event that even O'Charley's witnesses (Bruce and Heath) admit is unlikely.[29]  She argues that the same holds true for customers who drink at the bar: the customer will either wait at the bar until their table is called, and then carry their drink with them to their table (which, based on the layout of the restaurant, would be away from the area where Henry fell), or else continue to drink at the bar. [30]  Thus, once again, she alleges that the only likely scenario in

---

[25] Id.

[26] Id.

[27] Id.

[28] Id. at pgs. 2 – 3.

[29] Id. at pg. 3.

[30] Id. at pg. 3.

which a customer at the bar would spill their drink in the area where she fell would be if they carried their drink to the restroom.[31]

In its reply, O'Charley's reasserts its arguments, and alleges that Henry "relies almost exclusively on the testimony of Garrett Peak to assert that the Court should *assume* O'Charley's created the condition," even though Peak claimed in his deposition that he had "no knowledge regarding the creation of the puddle."[32]  It further asserts that the evidence shows that drinks could be spilled anywhere in the restaurant, and that the area where Henry fell is equally traversed by employees and customers.[33]  Finally, it argues that Henry is arguing for "strict liability" against O'Charley's, but that instead, since Henry bears the burden of proving the elements of her slip and fall case and has not produced any affirmative evidence showing that O'Charley's created the puddle, summary judgment is proper.[34]

Most cases addressing § 9.2800.6 concern whether the merchant had actual or constructive notice of a hazardous condition.  There are, however, a few cases which discuss whether the merchant actually *created* the hazard.  In general, the rule is that if the plaintiff can prove that that the merchant created the unreasonably dangerous condition, they need not also prove constructive notice by showing that the condition was present for "some period" long enough for the merchant to discover it.  *Darton v. Kroger Co.,* (La. App. 2 Cir. 8/25/94); 716 So. 2d 974, 976

---

[31] *Id.*

[32] Def.'s Reply to Mot. for Summ. J., [Doc. 50], at pg. 2.

[33] *Id.*

[34] *Id.* at pg. 3.

In one example, *Rodriguez v. Wal-Mart Stores*, 30771 (La. App. 3 Cir. 7/5/02); 820 So.2d 1190, a patron of Wal-Mart slipped and fell near the entrance of the store on standing water remaining from the watering of plants earlier that day. *Id.* at 1192. The trial court ruled in favor of the plaintiff. *Id.* On appeal, the Third Circuit upheld the trial court's determination that Wal-Mart had created the hazardous condition:

> [A] review of the record indicates that the trial court thoroughly considered the evidence and testimony of both parties. The trial court determined that pictures taken twenty-five minutes after the accident showed an excess of water still remaining in the parking lot and that this water could only have derived from the watering of the plants. Although we acknowledge that the presence of a foreign substance alone does not create a vice or defect, in light of the large amount of water still remaining only twenty-five minutes after the accident, we cannot say that the trial court was clearly wrong in determining that the water contributed to creating an unreasonable risk of harm.

*Id.* at 1195.

In another example very similar to this case, in *Ruby v. Jaeger*, 99-1235 (La. App, 4 Cir. 3/22/00); 759 So.2d 905, a customer slipped and fell on a small amount of clear liquid on the floor of a seafood restaurant. *Id.* at 906. No one testified to seeing the liquid before the customer's fall. *Id.* At a bench trial, the trial court entered judgment in favor of the customer. *Id.* On appeal, the Louisiana Fourth Circuit first noted that the plaintiff did not have to show constructive notice of the spill, because the plaintiff had instead presented evidence that the restaurant employees had created the condition which caused her to fall. *Id.* at 907. Reviewing the record, the court noted that the area where the plaintiff fell

> . . . was not near the entrance of the restaurant, so as to exclude the possibility of rain water being tracked in by other clients. The exhibits reveal that an oyster bar, water faucet, and hose were near the area where the liquid was found. A permissible view of these facts is that the liquid, six inches in diameter, would have come from the ice at the oyster bar or the hose.

*Id.*  The court found that given the location of the oyster bar, water faucet, and hose, it was reasonable for the trial court to conclude that the clear liquid was due to the restaurant or employees. *Id.*

In this instance, like in the cases mentioned above, the plaintiff has produced evidence creating a fact issue on whether the merchant created the puddle.  Testimony from current and former employees of O'Charley's shows that the area where she slipped was an area where patrons were not likely to carry their drinks, aside from the very rare occasion when a patron carried their drink to the bathroom with them.[35]  Additionally, Henry has produced evidence that the area is directly in the pathway where employees carry drinks to and from the kitchen, and that employees do occasionally spill drinks while transporting them to and fro.[36]  As such, she has created a sufficient fact issue on whether O'Charley's created the puddle, and thus summary judgment on her claims is not appropriate.

## II.  Henry has not Produced Competent Summary Judgment Evidence that her Blackouts were Caused by her Accident at O'Charley's

O'Charley's next argues that Henry has not produced medical evidence showing that her post-incident blackouts were connected to her slip and fall.  It notes that, while it received interrogatory responses from Henry indicating that she had suffered blackouts both before and after her fall, when O'Charley's actually attempted to request medical records from her doctors (Drs. Bailey and Snider) who treated her for her blackouts, it only received medical records from Dr. Snider.[37]  Poring through Dr. Snider's records, O'Charley's argues that nowhere does Dr.

---

[35] Dep. of Jared Heath at pg. 53; Dep. of Christopher Bruce at pg. 33.

[36] Dep. of Christopher Bruce at pgs. 26 – 27.

[37] Def.'s Mot. for Partial Summ. J. on Medical Causation, [Doc. 37-1], at pg. 2.

Snider express an opinion on whether the cause of Henry's blackouts was stress from her fall.[38] Thus, O'Charley's states that the only evidence linking the blackouts to Henry's fall is Henry's own lay opinion testimony, in which she claims that her blackouts were caused by stress from the accident. [39]

Henry responds by referencing medical records from Dr. Bailey, in which he notes that her blood pressure was "suboptimal" and her tilt test results were "abnormal."[40] She notes that Dr. Bailey also included a note that Henry "said she had some anxiety disorder and had taken medication for this."[41] Henry also points to her deposition testimony, in which she testified that Dr. Bailey had told her that her blackouts were caused by stress.[42]

O'Charley's responds that none of the evidence offered by Henry is "proper, admissible evidence in support of her claim that her blackouts causally relate to her fall at O'Charley's."[43] Reviewing both Dr. Bailey and Dr. Snider's notes, O'Charley's argues that nowhere do they reference Henry's fall at O'Charley's, or, more importantly, that her fall caused her stress which caused her blackouts.[44] Further, O'Charley's alleges that, instead of submitting proper summary judgment evidence in the form of an affidavit from Dr. Bailey, Henry instead has pointed to her

---

[38] *Id.*

[39] *Id.* at pg. 3.

[40] Pl.'s Opp. to Mot. for Partial Summ. J., [Doc. 46], at pg. 1.

[41] *Id.*

[42] *Id.* at pg. 2.

[43] Def.'s Reply to Mot. for Partial Summ. J., [Doc. 48], at pg. 1.

[44] *Id.* at pg. 2.

own improper hearsay deposition testimony that "Dr. Bailey told her that high stress caused her blackouts."[45]

The Louisiana Supreme Court has held that a plaintiff may be aided by a presumption of causation if: (1) before the accident, the plaintiff was in good health, but (2) subsequent to the accident, the symptoms of the disabling condition appeared and (3) those symptoms continuously manifested themselves afterward, providing that the evidence establishes a reasonable possibility of causal connection between the accident and the disabling condition. *Houslely v. Cerise,* 579 So.2d 973, 980 (La.1991). As Henry experienced her blackouts before her slip and fall, this presumption does not apply to her case. Instead, like in any typical personal injury suit, Henry bears the burden of proving a casual relationship between the injury sustained and the accident that caused the injury. *American Motorist Ins. Co. v. American Rent-All Inc.,* 579 So.2d 429, 433 (La.1991). She must prove causation by a preponderance of the evidence, which means that it is only necessary that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant. *Morris v. Orleans Parish School Bd.,* 553 So.2d 427, 430 (La.1989).

In Louisiana, "when the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required to prove causation." *Lassiegne v. Taco Bell Corp.,* 202 F.Supp. 2d 512, 524 (E.D. La. 2002) (citing *Pfiffner v. Correa,* 94-0882 (La. 10/17/94); 634 So.2d 1228, 1234). For example, in *Lassiegne v. Taco Bell,* a plaintiff attempted to present his own lay testimony to show that there was a causal link between his choking on a chicken bone at a restaurant and subsequent impotency, migraine headaches, and post-traumatic stress disorder. *Id.* at 523. The Eastern District of Louisiana rejected this lay testimony, finding

---

[45] *Id.*

12

that "the causes of impotency, migraine headaches and PTSD are not matters within the common knowledge of a lay person," and thus expert testimony was required to show medical causation. *Id.* at 524.

In this case, the only evidence provided by Henry to the court is: (1) a statement in her deposition that she thought her blackouts were caused by stress from the accident, (2) a statement in her deposition that Dr. Bailey had told her that her blackouts were caused by stress, and (3) some medical records from Dr. Bailey in which Dr. Bailey notes that Henry reported she had an anxiety disorder.[46] Henry's own speculation that her blackouts were caused by stress from the accident is not proper evidence to prove medical causation, as they are not matters within the common knowledge of a lay person. *See id.* Further, her statement that Dr. Bailey told her that stress had caused her blackouts is inadmissible hearsay evidence, and thus cannot properly be considered in a motion for summary judgment. FED. R. EVID. 802; *see also* FED. R. CIV. P. 56(C) (hearsay evidence is not competent summary judgment evidence). Reviewing Dr. Bailey's medical records, while he notes that Henry has told him she suffers from an anxiety disorder, nowhere does he link this anxiety disorder to her blackouts.[47] Henry essentially requests that the court fill in the gap and conclude that because Dr. Bailey noted she had told him she suffered from anxiety disorder, and because her tilt test was abnormal, these two were connected. This the undersigned cannot do.

Henry has requested that, pursuant to Fed. R. Civ. P. 56(e)(1), the court allow her an opportunity to support or address any assertions of facts that are currently not supported by

---

[46] *See generally* [Doc. 46].

[47] Records from Dr. Bailey, Ex. to Pl's Opp. to Motion for Partial Summ. J., [Doc. 46-2].

competent summary judgment evidence.[48] Rule 56(e)(1) provides that "if a party fails to properly support an assertion of fact of fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact." The 2010 Amendment advisory notes state that a court giving a party an opportunity to properly support or address a fact is often "the court's preferred first step." Here, the undersigned finds that supplementing her response would not cure the defects that remain with the medical causation of her blackouts, and thus this request is denied. As noted *supra*, she had blackouts *before her slip and fall even happened.* Construing the evidence in the light most favorable to Henry, there is no evidence linking the blackouts to her slip and fall, and thus summary judgment on the issue of medical causation of her blackouts is proper.

## CONCLUSION

Because the evidence shows a question of material fact on whether O'Charley's created the puddle which caused Henry's accident, summary judgment on her claims is not appropriate at this time. As Henry has not created an issue of material fact on medical causation of her blackouts, however, O'Charley's is entitled to summary judgment on the issue of medical causation of the blackouts.

Lake Charles, Louisiana, this **27** day of ⟨ ⟩ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[48] [Doc. 46] at pg. 2.